**WHITE, Trustee, et al. v. KIMERER et ux.**

No. 10286—Opinion Filed July 26, 1921.

(Syllabus.)

**1. Army and Navy—Soldiers' Relief Act—Stay of Action During Military Service—Codefendants.**

"Any stay of any action, proceeding, attachment, or execution, ordered by any court under the provisions of this act may, except as otherwise provided, be ordered for the period of military service and three months thereafter, or any part of such period, and subject to such terms as may be just whether as to payment in installments of such amounts and at such times as the court may fix or otherwise. Where the person in military service is a codefendant with others, the plaintiff may, nevertheless by leave of court, proceed against the others." Act of March 18, 1918, chap. 20, section 204, 40 Stat. (section 10321, Barnes' Federal Code, 1919).

**2. Same—Effect of Dismissal as to Codefendant in Military Service—Refusal of Continuance.**

Where a person in the military service is a codefendant with others and the other defendants ask for a continuance of the cause under the act of March 18, 1918, supra, and thereupon the plaintiffs dismiss the action with prejudice as against such person in the military service and the court refuses to grant the continuance, in the absence of an abuse of discretion or a showing of prejudicial error, the order of the court refusing to grant the continuance will not be reversed on appeal.

**3. Pleading—Judgment on Pleadings—Refusal.**

Where the petition of the plaintiff clearly states a cause of action, and the reply contains simply a general denial of the allegations set forth in the answer, and the opening statement of the plaintiff does not show a state of facts which would preclude plaintiff's right of recovery, it is not error for the court to refuse to render judgment in favor of the defendants on the pleadings and opening statement of the plaintiff.

**4. Appeal and Error—Record—Showing of Error—Record Evidence — Affidavit for Continuance.**

Where only a portion of an affidavit for a continuance is read to the jury, and the record fails to show why the other portion of the affidavit was not read, and no demand was made to read the other portion of the affidavit by the party offering the same as evidence, such record does not show that error was committed by the trial court because the other portion of the affidavit was not read to the jury.

**5. Appeal and Error—Necsssity for Prejudice—Amendment of Pleadings.**

Where the defendants ask leave of court to amend their answer to conform to the proof on a certain issue, and the trial court submits the issue to the jury under appropriate instructions, but refuses defendants' request to amend the answer, the court has thereby treated the answer as amended so far as the submission of the case to the jury is concerned, and no prejudicial error was committed by refusing to permit defendants to make the interlineations in the answer.

**6. Master and Servant—Action for Negligent Death of Mine Employe — Instructions—Sufficiency.**

The instructions examined; held, that they fairly cover the case and state the law.

Error from District Court, Ottawa County; Preston S. Davis, Judge.

Action by Joseph L. Kimerer and Nina P. Kimerer, his wife, against William Foster White, trustee, et al., to recover damages for the death of the minor son of the plaintiff, alleged to have been caused by the negligence of the defendants. Verdict and judgment for plaintiffs, and defendants appeal. Affirmed.

E. S. Bessey, for plaintiffs in error.

Riddle, Bennett, Wilson & Mitchell and Fred A. Walker, for defendants in error.

MILLER, J. This action was commenced in the district court of Ottawa county by Joseph L. Kimerer and Nina P. Kimerer, his wife, as plaintiffs, against William Foster White, trustee, William Foster White, Ed. Jones (who is otherwise known as Clyde Testerman), and Jesse Drawley, as defendants. The action was to recover damages because of the death of William Joseph Kimerer, who was the son of the plaintiffs. At the time of the trial of the case the action was dismissed as against Ed. Jones with prejudice and proceeded as against the remaining defendants. The case was tried to a jury, which returned a verdict in the sum of $4,000 in favor of the plaintiffs and against the defendants White and White. Judgment was rendered on the verdict, to reverse which the defendants White and White appeal and appear here as plaintiffs in error. For convenience, the parties will will be referred to as they appeared in the court below.

The plaintiffs alleged in their petition that they were husband and wife. That Joseph L. Kimerer is the father and Nina P. Kimerer is the mother of William Joseph Kimerer, deceased. That on the 23rd day of August, 1917, and prior thereto, the said

William Joseph Kimerer resided with his parents, the plaintiffs herein, at the town of Picher, in Ottawa county, Oklahoma, and that he was ten years of age. That deceased was a bright boy, strong, healthy, industrious, and very kind and affectionate toward his parents, and had been helping and assisting them about the work at home and working for other people, and had received for his services from fifty cents to a dollar and twenty-five cents per day. That plaintiffs would have received from him during his minority and after his majority his services and pecuniary benefits had he not been killed by the carelessness and negligence of the defendants as hereinafter set forth. The petition then sets out that William Foster White, trustee, and William Foster White are the owners of a certain mineral lease in Ottawa county on which he has a lead and zinc mine. That he was operating this lease and defendant Jesse Drawley was the top boss, or man in charge of the operations of said mine at the top of the ground. That there was a concentrating plant and mill, mining machinery, buildings, trams, tramcars, and other equipment used in raising, crushing, separating, and cleaning the ores produced on said premises. That as a part of said equipment, said defendants had built a tram and tramtrack about 30 or 40 feet in height, leading from the shaft to a point about 100 feet from said shaft, over which tram flint boulders, rock, and refuse from said mine were pushed and transported in tramcars and tubs to the end of said tram and track, and then dumped from said cars and tubs to the ground. That defendant Ed. Jones was, on the 23rd day of August, 1917, in the employ of said defendants William Foster White, trustee, and William Foster White, and part of his duties under such employment was to push said tramcars loaded with flint boulders, rock, and refuse, when hoisted from the mine, over said tram and tramtrack to the end, and there dump such boulders, rock, and refuse from said cars.

The evidence shows that on the afternoon of August 22, 1917, the defendant Jesse Drawley, acting as superintendent or top boss at said mine, employed the deceased and his brother to haul said flint boulders, rock and refuse from the dump pile at the end of said tramway to other places upon said mining property to build and repair some surface roadways. That the said deceased and his brother worked at such employment during the afternoon of said day. On the morning of the 23rd day of August, 1917, the said deceased and his brother returned with the team and wagon and continued in such em-

ployment. They had hauled one load of rock and unloaded it when the father of deceased, Joseph L. Kimerer, arrived. Thereupon the deceased, his brother, father, and defendant Jesse Drawley got into the wagon and drove to the pile of rock underneath the end of the tramway and there began loading the wagon with the said boulders, rock, and refuse. Plaintiff Joseph L. Kimerer began shoveling the rock into the wagon.

Deceased and his brother climbed upon top of the pile of rock. The brother of deceased testified they got up there to roll the boulders and rock down. Defendant Jesse Drawley was at the rear end of the wagon and near the pile of rock. The evidence does not show whether or not he had actually begun loading rock into the wagon. A car of rock was dumped from the top of said tramway onto the pile below while the deceased was on top of said pile. The boulders, rock, and other refuse falling upon the deceased fractured his skull and otherwise crushed and bruised him, and from the result of such injuries he died almost instantly.

The acts of negligence charged against the defendants are that deceased was not furnished a safe place in which to work, and that defendants failed to give any warning of their intention to dump the rock at the end of the tramway.

The defendants make several assignments of error, and then discuss them under five subdivisions, which will be taken up in their consecutive order.

"First, the refusal of the court to grant continuance on the ground of the absence of a party defendant, who was then in military service of the United States and who was a material witness for the other defendants."

The section of the federal statute relied upon by defendants is the act of March 18, 1918, chap. 20, section 204, 40 Stat., and which is section 10321, Barnes' Federal Code, 1919:

"Any stay of any action, proceeding, attachment, or execution ordered by any court under the provisions of this act may, except as otherwise provided, be ordered for the period of military service and three months thereafter, or any part of such period, and subject to such terms as may be just whether as to payment in installments of such amounts and at such times as the court may fix or otherwise. Where the person in military service is a codefendant with others, the plaintiff may nevertheless by leave of court proceed against the others."

The last sentence in the act provides that the plaintiff may by leave of court proceed against the other defendants. We have ex-

amined the record in this case and cannot say there was an abuse of discretion in permitting the plaintiffs to proceed against the other defendants. It is not shown that any other witness except Ed Jones, who is otherwise known as Clyde Testerman, was not present on account of Ed Jones being in the military service of the United States at the time of the trial.

Counsel quote the case of Cox v. Kirkwood, 41 Okla. 704, 139 Pac. 980, but the facts upon which that decision is based are quite different from the facts in the case at bar.

"Second, the refusal of the court to render judgment for defendants on the pleadings and admissions and statements of counsel for plaintiffs made in the opening statement to the jury."

We have carefully examined the pleadings and the opening statement of counsel for the plaintiffs, and we cannot say that they entitle the defendants to judgment in their favor.

"Third, error in the submission to the jury, as the admitted testimony of Clyde Testerman, a portion only of the affidavit for a continuance, and excluding other material portions of this affidavit."

Section 5045, Revised Laws of Oklahoma 1910, prescribes the procedure for obtaining a continuance, and is as follows:

"A motion for a continuance, on account of the absence of evidence, can be made only upon affidavit, showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it, and where the evidence may be; and if it is for an absent witness, the affidavit must show where the witness resides, if his residence is known to the party, and the probability of procuring his testimony within a reasonable time, and what facts he believes the witness will prove, and that he believes them to be true. If thereupon, the adverse party will consent that on the trial the facts alleged in the affidavit shall be read and treated as the deposition of the absent witness, or that the facts in relation to other evidence shall be taken as proved to the extent alleged in the affidavit, no continuance shall be granted on the ground of the absence of such evidence."

This statute says if the adverse party will consent that on the trial the facts alleged in the affidavit shall be read and treated as the deposition of the absent witness, no continuance shall be granted on the ground of the absence of such evidence. The part of the affidavit for continuance complained of is as follows:

"W. J. Borries, of lawful age, being first duly sworn, states that he is resident agent and manager of the mining property belonging to the defendant William Foster White, trustee, operating the mining enterprise in connection with which the accident occurred complained of by the plaintiffs, and was such manager at the time of the accident; that 'William Foster White is a resident of the city of New York and is not now present in Ottawa county, Oklahoma; that said defendant and his codefendants are unable to proceed to trial in this cause at this time for the want of material evidence, which with due diligence they have been unable to procure. That is to say, testimony of Ed Jones, whose true name is Clyde Testerman, a defendant herein and who was at the time of said accident employed as screen man by defendant William Foster White, trustee, and whose duty it was to push cars of boulders from the cull-room out over the elevated tramway and empty and discharge the same at the end of the elevated tramway onto the boulder pile beneath: that the death of William Joseph Kimerer was causd by the falling of boulder from the end of said tramway so emptied and discharged by this witness, a co-defendant herein; that said Clyde Testerman is now, and for months past has been, in the military service of the United States; that no subpoena was issued for said witness because of his being a codefendant and because on account of such military service he is not subject to civil processes of this court and his attendance here at this time cannot be compelled or otherwise procured; that said witness, as defendant, erroneously sued as Ed Jones, has answered denying specifically all the allegations of the plaintiffs' petition imputing negligence to the defendants."

The record fails to show that defendant made any demand to read that portion of the affidavit for continuance. Neither does it show that the court denied the defendant the right to read that portion.

In the absence of such a showing no prejudicial error was committed.

"Fourth, a prejudicial abuse of discretion of the court in not permitting the defendants to amend their answer to conform to the proof covering all the issues as disclosed by the evidence."

In support of this claim of error the defendants make the following contention:

"We think the court should have permitted the defendants to amend their answer to more specifically conform to the proof covering the question of whether or not the deceased boy at the time of the accident was in the employment of the master or a mere licensee stated in the alternative. If he was employed, the master owed to him the duty of furnishing him a safe place in which to work, and might have owed him the duty of giving signals or warnings of danger and possibly the exercise of extraordinary care for the safety of the employe. If the deceas-

ed boy was not employed the operators of the mine were bound to exercise ordinary care only. This issue was not well defined either in the pleadings or the instructions given by the court, and this issue submitted in this manner was calculated to confuse and perplex the jury. The motion to amend with appropriate instructions as asked for by plaintiffs in error should have been granted. Amendments of this character are favored by the courts. Fulsom-Morris Coal & Mining Co. v. Mitchell, 37 Okla. 575, 132 Pac. 1103; Penn v. Penn, 37 Okla. 650, 133 Pac. 207; Statutes 1910, section 4790."

We think the court treated the amendment as made by giving instruction No. 17, which is as follows:

"As to whether the deceased William Joseph Kimerer, was working under a contract of employment with the defendants, or either of them, at the time he met his death, is a question of fact, which the jury will determine in the light of all the facts and circumstances in evidence before them, touching upon this question upon the trial of this cause.

"If you find and believe from the evidence in this case that the deceased William Joseph Kimerer, was not in the employ of the defendants or either of them, at the time of his death, but was a mere licensee upon the premises of the defendants, then and in that event the defendants and each of them, together with their agents, servants, and employes, would owe to the deceased ordinary care and it would be incumbent upon them to use all reasonable and ordinary means and diligence to avoid injuring or killing the deceased."

The jury was instructed on the question of whether the deceased was an employe or a licensee; therefore, no prejudicial error was committed by not permitting the physical amendment to be made in the answer. The instructions gave defendants the benefit of the amendment the same as though it had been interlined in the answer.

"Fifth, erroneous instructions to the jury given by the court, and the refusal of the instructions asked for by the defendants, and the refusal of a peremptory instruction for defendants."

We have examined the instructions given by the court and the instructions asked for by the defendants which were refused by the court, and we are of the opinion that the instructions given by the court fairly cover the case and state the law. We do not think any prejudicial error occurred by refusing to give the instructions asked for. Under the evidence introduced the defendants were not entitled to a peremptory instruction.

Finding no reversible error, the judgment of the trial court is affirmed.

PITCHFORD, V. C. J., and JOHNSON, KENNAMER, and NICHOLSON, JJ., concur.