## SKIDMORE v. OKLAHOMA HOSPITAL.

No. 18879. Opinion Filed March 12, 1929.

Rehearing Denied June 18, 1929.

W. B. Robinson and Massingale & Duff, for plaintiff in error.

A. F. Moss and H. R. Young, for defendant in error.

HERR, C. This is an action by Lizzie May Skidmore against the Oklahoma Hospital, of Tulsa, Okla., a corporation, to recover damages because of alleged negligence of the hospital nurses in caring for her while a patient in-said hospital.

It is alleged that on the 2nd day of May, 1925, Dr. D. L. Garrett, a physician and surgeon of Tulsa, Okla., performed an operation upon her at defendant hospital; that said operation consisted in the removal of a portion of the uterus; removal of the ovaries; and also raising and stitching in place the bladder.

It is alleged that because of the operation plaintiff was unable to vacuate the urine naturally, and that it therefore became necessary that she be relieved by the use of a catheter; that on the 9th day of May, her bladder became filled with urine; that she was unable to void naturally; that she requested the nurses in charge to catheterize her; that they refused to do so; that she was permitted to go without this necessary attention for a period of 22 hours, although during this period of time she repeatedly requested that the catheter be used; that during this period of time she suffered intense pain; that she pleaded with the nurses that her physician be called that she might be relieved, but that these requests went unheeded.

It is further alleged that because of the failure of the nurses to properly relieve her, the bladder became filled and distended to such an extent that the stitches placed therein tore out, causing her bladder to fall, and that the same now occupies a fallen and lowered position.

Plaintiff prayed for damages in the sum of $10,000, the elements of damage claimed being the extra pain and suffering undergone during the 22-hour period complained of, and because of the fallen and lowered condition of the bladder. The trial court sustained a demurrer to plaintiff's evidence and rendered judgment in favor of defendant. Plaintiff appeals.

It is contended by defendant that the evidence is wholly insufficient to establish that the distention of the bladder caused the stitches to tear, and that the tearing of the stitches caused the bladder to fall; that there is no expert testimony supporting this theory of plaintiff's case.

Two physicians testified on behalf of plaintiff—the physician who performed the operation and another. Both physicians testified that in their opinion the distention of the bladder did not cause the stitches to tear, and that the tearing of the stitches was not the cause of the falling of the bladder, but that the same was occasioned by natural absorption of the stitches.

We think, in order to sustain this theory of her case, it was necessary that she establish the same by expert testimony. In the case of St. L. & S. F. Ry. v. Criner, 41 Okla. 256, 137 Pac. 705, it is said:

"Where the injuries are of such character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science, and must necessarily be determined by the testimony of skilled professional persons."

See, also, A., T. & S. F. Ry. Co. v. Melson, 40 Okla. 1, 134 Pac. 388.

The rule announced in these cases is well established, and if this were the only element of damages sought to be recovered, the judgment of the trial court would be correct. The plaintiff, however, seeks to recover damages because of the extra pain and suffering endured during the 22 hours in which it is alleged she failed to receive proper attention and treatment.

The rule of law applicable to the facts on this branch of the case is as stated in the case of Wetzel v. Omaha Maternity & General Hospital Association (Neb.) 148 N. W. 582:

"A hospital, incorporated and conducted for private gain, is liable in damages to patients for the negligence of nurses and other employees. * * *

"The general principle that a master is responsible for the torts of a servant in the scope of his employment applies to hospitals incorporated and conducted for private gain."

See, also, Hogan v. Hospital Co. (W. Va.) 59 S. E. 943; Fawcett v. Ryder (N. D.) 135 N. W. 800; University of Louisville v. Hammock (Ky.) 106 S. W. 219, 14 L. R. A. (N. S.) 784; Gitzhoffen v. Sisters of Holy Cross Hospital (Utah) 88 Pac. 691, 8 L. R. A. (N. S.) 1161.

In the case of Tulsa Hospital Association v. Juby, 73 Okla. 243, 175 Pac. 519, this court says:

"A hospital that is conducted for private gain receives patients under an implied obligation that it will exercise ordinary care and attention for their safety, and such degree of care and attention should be in proportion to the physical and mental ailments of the patient, and the question whether or not such requirements have been met presents an issue of fact to be determined by the jury."

It is admitted that defendant hospital is incorporated and that it is conducted for private gain.

Relative to the negligence of the nurses, plaintiff testified that on May 2, 1925, she was operated upon by Dr. Garrett at defendant hospital; that from that time until May 7th she could not pass urine naturally; that during said time it was necessary to use the catheter in order to give her relief; that on the 7th and 8th, she did not experience this trouble, but that at about 3 a. m. on the morning of the 9th this trouble reoccurred, and that by 9 o'clock in the morning she was suffering intense pain; that this suffering continued for 22 hours, after which time she was relieved by use of the catheter; that during this time she repeatedly requested the nurses in charge to relieve her, that this request was denied by them for the reasons, as stated by them, that the head nurse would not permit the use of the catheter. That during this time, plaintiff repeatedly requested that her physician be called in order that she might be relieved from her suffering. This request was likewise denied.

Plaintiff further testified that after 22 hours of intense suffering, her physician was finally called; that she was relieved by use of the catheter; that her pain immediately ceased, and that she went to sleep within five minutes thereafter; that she finally awoke with a hemorrhage, and was again placed on the operating table.

Edna Richardson, one of the nurses in attendance on the plaintiff, testified that plaintiff was permitted to go 22 hours without catheterization; that she apparently suffered intense pain during that time; that she, Miss Richardson, pleaded with the head nurse that plaintiff be catheterized; that this request was, by the head nurse, denied. This witness further testified that after it became rumored that the hospital was to be sued by plaintiff for its negligence in her treatment, the nurse's chart was changed by someone in authority about the hospital in order to show that plaintiff was catheterized at proper intervals instead of showing that she was permitted to go 22 hours without such care.

This evidence was certainly sufficient to go to the jury on the question of negligence of the hospital in caring for and treating plaintiff.

This proposition is not seriously disputed by defendant, but the contention is, as we understand, that the evidence is insufficient to show that plaintiff's pain and suffering were caused by the failure of the nurses to relieve her by use of the catheter; that the pain and suffering endured by her were the natural result of the operation.

On this proposition, Dr. Garrett, plaintiff's physician, testified that he left instructions with the nurses that if plaintiff did not void naturally, and gave symptoms of suffering, she should be catheterized every eight hours; that as to whether the pain was caused by the filling of the bladder and the inability of plaintiff to pass urine naturally, or such pain was the natural result of the operation, he could not state positively, but that, in similar cases, his experience was that some patients suffered considerable pain, while others scarcely suffered pain at all.

Dr. Vaughn, another physician, testified that in such cases the average patient would suffer considerable pain.

We think the testimony of these physicians, in connection with plaintiff's testimony and that of the nurse, was sufficient to take the case to the jury on the question as to whether or not the pain and suffering of the plaintiff was due to lack of proper attention or resulted naturally from the operation.

The demurrer to the evidence should have been overruled. Judgment should be reversed, and the cause remanded for a new trial.

BENNETT, JEFFREY, HALL, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See nder (1) anno. 6 L. R. A. (N. S.) 306; L. R. A. 1915D, 334; 22 A. L. R. 341; 39 A. L. R. 1435; 13 R. C. L. p. 949; 3 R. C. L. Supp. p. 113; 4 R. C. L. Supp. p. 846; 5 R. C. L. Supp. 721; 6 R. C. L. Supp. p. 777; R. C. L. Supp. p. 437. See "Hospitals," 30 C. J. §15, p. 465, n. 82; §17, p. 467, n. 13; §31, p. 470, n. 2.