[Civ. No. 7041. Third Dist. Aug. 14, 1944.]

LYDA WELSH, Respondent, v. MERCY HOSPITAL (a Corporation), Appellant.

Van Dyke & Harris for Appellant.

Sumner Mering for Respondent.

THOMPSON, J.—The plaintiff was a patient in the Mercy Hospital in Sacramento. While a nurse was lowering the bed in which the patient was reclining, by means of a mechanical device attached to the frame of the bed, the plaintiff extended her right arm and unwittingly placed her hand beneath the metal bar as it descended, crushing her third finger. The plaintiff was not familiar with that contrivance and the nurse, who observed her extending her arm, failed to warn her of the danger. The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiff. A judgment was rendered against the hospital for negligence in the sum of $3,686.35. From that judgment this appeal was perfected.

The appellant contends that the findings and judgment are not supported by the evidence; that the record shows as a matter of law that neither the hospital nor its nurse was

guilty of negligence which was the proximate cause of the injury, and that, on the contrary, the plaintiff's injury was due solely to her own contributory negligence. It is also asserted that the appellant was deprived of a fair and impartial trial by refusal of the court to continue the trial so as to permit the presence of the nurse as a witness. The deposition of the nurse was received in evidence.

The plaintiff, Lyda Welsh, who was a woman 65 years of age, became a patient at the Mercy Hospital in Sacramento on May 27, 1942. She was assigned to a hospital bed in room number 350. The head of the bed was adjacent to the wall of her room. A small table stood near the head of the bed on her left hand side. To the metal frame of the bed there was attached a mechanical device which was operated by hand for the purpose of raising or lowering the bed upon which the patient reclined. The device is equipped with a steel bar which enters a groove along the side of the metal frame of the bed. That lever or bar is ordinarily concealed from the view of the occupant of the bed by the mattress and bedclothes. The plaintiff testified in that regard: "Q. Was there any part of the mechanism that showed itself or protruded up that you could see? A. No." The plaintiff had no previous knowledge of the danger or the manner in which that mechanical device was operated. She so testified. It is true that the head of the bed was raised on one occasion while she was a patient in the hospital, but she paid no attention to that operation and knew nothing of its arrangement or danger. In response to the question "What attention did you pay to that?", she replied, "I did not pay any."

A minor operation was performed on the plaintiff the night before the accident occurred. On the evening of May 29th, just prior to the accident, the head of plaintiff's bed was elevated. Miss Katherine Riley was a trained and registered nurse who had been employed by the appellant for several years. She fully understood the character and danger of the bed adjusting device which caused the accident. She was assigned as plaintiff's nurse. When she entered room 350, at about 11 o'clock p. m. on May 29th, Mrs. Welsh asked her to lower the bed so that she could go to sleep. In compliance with that request the nurse went to the head of the bed on plaintiff's left side, standing between the bed and the

little table, facing the wall, and without warning plaintiff of the danger, she proceeded to lower the bed. The nurse said, in her deposition, that:

"I grasped the head of the bed, the frame of the bed, with my left hand, and I picked up the piece that comes out of the groove with my right, and in this way I had to turn my back to her slightly; . . . After I had started to raise the bed out of the groove, she turned over more towards her right side and reached down with her right hand towards the— I thought at the time,—the table at the side of the bed. . . . She told me after the accident that she had meant to help. . . . She apparently caught the tip of her finger between the middle edge of the bed, the mattress ring and the middle edge of the main part of the bed, as it was lowered, *or in the bar that comes down* into the groove. . . . She pulled her hand out as the bed was just about this far up (indicating). That is why I believe it was the bed metal on the mattress and the bar that goes down into the groove, which would form kind of a 'V' going down and would be narrower. . . . She got back on her elbow, put her hand down like this (indicating), it would be just about even or a little below her shoulder, and she was sitting up in the bed. . . . When I noticed her I believed at the time she was reaching towards something on the side table."

It will be observed from the preceding quoted evidence of the nurse that she saw the plaintiff extending her right arm over the edge of the bed. She said "After I had started to raise the bed out of the groove, she turned over more towards her right side and reached down with her right hand." Yet the nurse failed to warn the plaintiff of the danger of placing her fingers under the descending lever or bar.

The following morning, in the presence of the nurse and a student nurse of the hospital, the plaintiff said, "She realized it was not my fault, or she didn't blame me, or one or the other of those statements." In explanation of that statement the plaintiff testified: "She [the nurse] was terribly distressed. I felt sorry for her, and I was afraid she might lose her job. . . . *I knew she didn't mean to do it.*"

As a result of the accident the end of plaintiff's finger was amputated. That operation was followed by infection, "considerable disuse of the finger on the end, and a definite loss

of power in that hand. . . . There was secondary infection,'' and the possible necessity of ''the removal of the additional portion of the finger.'' The plaintiff suffered great pain.

The evidence does not appear to be conflicting to any material extent. The court found that plaintiff's injuries resulted proximately from the negligence of the appellant and its nurse in carelessly lowering the head of the bed without warning the patient of the danger of the mechanical device, and that ''plaintiff was free of any fault or negligence.'' From the judgment which was accordingly rendered in favor of the plaintiff, this appeal was perfected.

We are of the opinion the findings and judgment are adequately supported by the evidence. ■ As a patient who paid for her treatment and care in the Mercy Hospital, the plaintiff was an invitee toward whom the hospital was required to exercise ordinary care in providing a bed and attached devices reasonably safe and free from danger. (*Mautino* v. *Sutter Hospital Association,* 211 Cal. 556 [296 P. 76].) ■ While it is true the owners of the hospital are not insurers of the safety of its patients, it nevertheless owes them the duty to exercise ordinary care to see that the premises and equipment are in safe condition. ■ It is also true that there is ordinarily no liability for injuries received from defects or dangers which are obvious and known to the injured person, and which may be avoided by the exercise of reasonable prudence on his part. (*Mautino* v. *Sutter Hospital Association, supra.*) ■ As the caption to an elaborate note found in 22 American Law Reports, at page 341, says,

''It is well settled that the owner or proprietor of a private hospital or sanitarium, which is operated for profit and is not a·charity, is liable in damages for injuries to patients due to the negligence of nurses or other employees.''

■ In the present case the dangerous device attached to the bed, by means of which the plaintiff was injured, was unknown to her. Plaintiff's testimony makes it very clear that she did not know how that particular device operated or that it was dangerous for her to reach out over the edge of the bed while it was being lowered. The circumstances of this accident indicate· that it was a dangerous device. By her act of raising herself on one elbow and reaching out to the frame of the bed on her right side she unwittingly placed

her hand beneath the descending lever or bar and lost the end of her finger. She had not seen that device in operation. She said that she had no knowledge of its operation or danger, and that she paid no attention on the one occasion when the bed was previously raised in that manner. The evidence reasonably indicates that the bar which fitted into the groove of the frame at the side of the bed was at least partially concealed by the mattress and bed clothing. The operation of that device and the manner in which the accident occurred were demonstrated at the trial in the presence of the judge. He was better qualified than this court would be to determine from that illustration and the evidence of the witnesses whether it was in fact a dangerous instrumentality which was obvious to the plaintiff. Under the circumstances of this case, the question as to whether the plaintiff was guilty of contributory negligence because the device was obviously dangerous was a question for the determination of the trial judge, with whose conclusion in that respect we may not interfere on this appeal. (*Sanders* v. *City of Long Beach,* 54 Cal. App.2d 651 [129 P.2d 511]; *Young* v. *Bates Valve Bag Corp.,* 52 Cal.App.2d 86, 95 [125 P.2d 840]; *Neel* v. *Mannings, Inc.,* 19 Cal.2d 647 [122 P.2d 576]; *Locke* v. *Red River Lumber Co., ante,* p. 322 [150 P.2d 506]; 38 Am.Jur. 1052, § 348.) In the Neel case it is said that:

"Where different conclusions may be reasonably drawn by different minds from the same evidence, the decision must be left to the jury," or the trial court.

In 38 American Jurisprudence 866, section 190, it is said with respect to the reasonable care required of a plaintiff to see and appreciate the·danger of obvious defects:

"Contributory negligence is not imputable to a plaintiff for failing to look out for a danger which he had no reasonable cause to apprehend, or to a plaintiff who was deceived by appearances calculated to deceive an ordinarily prudent person."

In the absence of knowledge to the contrary, a patient in a private hospital has a right to assume she will be provided with a bed and attached equipment for raising and lowering it which is reasonably safe and free from danger.

A hospital conducted for private gain is liable in damages to patients for the negligence of nurses and other

employees. (*Skidmore* v. *Oklahoma Hospital,* 137 Okla. 133 [278 P. 334] ; 4 Shearman & Redfield on Neg., rev. ed., 1582, § 661.)

It may not be said in this case the plaintiff admitted her injury was due to her own fault or lack of care. She told the nurse she realized it was not her fault, or that she didn't blame her for the accident. But the plaintiff satisfactorily explained that remark by saying she "knew she [the nurse] didn't mean to do it." Of course the nurse did not intend to injure the plaintiff. The plaintiff further explained that remark by saying the nurse was terribly distressed over the accident, and that she felt sorry for her and feared she might lose her job on that account. The credibility of the witness and the weight and sufficiency of the evidence were matters for the determination of the trial judge. We are bound by his conclusions in that regard.

We are of the opinion that, while the appellant is not an insurer against any injury which may be received by a patient in the hospital, there is sufficient evidence to support the findings of the court that the nurse was guilty of negligence which proximately caused the accident by failing to warn the plaintiff of the danger of the descending bar when the nurse saw her reaching her arm in that direction. That negligence may be imputed to the hospital so as to create a liability on its part for the injury received on that account, as we have previously stated.

The questions under conflicting evidence as to whether the act or omission of a nurse employed by a hospital, who is assigned to the care of a patient, constitutes negligence, whether the hospital or nurse exercised the requisite degree of care for the safety of a patient under the particular circumstances, or whether the hospital or nurse should have foreseen the casualty and protected the patient by adequate warning of a known danger, are ordinarily problems for the jury or trial judge. (30 C.J. 470, § 31.) When there is substantial evidence to support the findings of the trial court upon those issues, its conclusions may not be interfered with on appeal. In the present case the trial judge determined those issues against the appellant. The judge said in that regard:

"The plaintiff had no idea of the mechanics of the bed, and was unaware that she was placing her hand in a position of danger. . . . Here we have a patient in a hospital who, through

no fault of her own, receives a very painful and permanent injury. . . .

"While the nurse was in plaintiff's room attending to lowering the mechanical apparatus the patient was under her care. The nurse knew the mechanics of the bed, and knew the hidden danger. . . . It was the duty of the nurse when she saw that plaintiff's hand was being extended beyond the edge of the mattress or that she had a hold on the edge of the bed to have realized the danger and have given warning before lowering the bed. In other words, the circumstances were such that the nurse might reasonably have anticipated the danger of plaintiff placing her hand in the position she did, the former knowing the hidden danger and the latter being entirely ignorant thereof. (19 Cal.Jur. 562, sec. 13.)"

We are bound by the trial court's finding in this case that the nurse was guilty of negligence as the trial judge aptly states.

▮ The court did not err in refusing to grant appellant's motion to continue the trial on the ground that Katherine Riley, the nurse employed by the hospital, on account of whose alleged negligence plaintiff sought damages against the hospital for personal injuries sustained had enlisted and was serving as a nurse in the United States Army at the time of the trial. The action was dismissed as to Katherine Riley who had been served with process as a "Jane Doe" party named in the complaint. Her deposition was duly taken and received in evidence. It does not appear that the appellant was prejudiced by her absence from the trial. It does not appear that she would or could have testified to any material evidence not contained in her deposition. The motion for continuance was made under section 524 of the Soldiers' and Sailors' Civil Relief Act of 1940 (50 U.S.C.A. Cumulative Ann. Pocket Part for 1943, p. 209.) That section provides that:

". . . Where the person in military service is a co-defendant with others the plaintiff may nevertheless by leave of court proceed against the others."

In the case of *White* v. *Kimerer,* 83 Okla. 9 [200 P. 430], it was held under similar circumstances that a refusal to continue an action for damages on account of the absence and service of a codefendant in the United States Army, against

whom the suit was dismissed, did not constitute error. That statute was enacted for the welfare of the services of the United States Army and Navy and applies only to persons who are engaged in the military services of our country. It is designed to prevent prejudice to the civil rights of such persons while they are so engaged. (50 U.S.C.A. Supp., *supra*, § 510, p. 187.) There is nothing in the act which requires the continuance of an action merely because a material witness who is not a party to an action is engaged in the military services of our country. Moreover, even where the stay of proceedings is sought under section 521 of that act on the ground that either the plaintiff or the defendant in a pending action is engaged in the military service of the United States, the trial court has a sound discretion to determine from the showing made whether his cause or defense would be "materially affected" by a denial of the motion for continuance. (*Ridley* v. *Young*, 64 Cal.App.2d 503 [149 P.2d 76]; *Briner* v. *Briner*, 60 Cal.App.2d 473 [140 P.2d 995]; *Boone* v. *Lightner*, 319 U.S. 561 [63 S.Ct. 1223, 87 L.Ed. 1587]; *Pope* v. *United States Fidelity & Guaranty Co.*, 67 Ga.App. 415 [20 S.E.2d 618].)

In the present case the court did not abuse its discretion in denying appellant's motion for a continuance. No sufficient showing for that continuance was shown. The appellant does not appear to have been prejudiced by its failure to procure the personal presence of the nurse at the trial.

The judgment is affirmed.

Peek, J., and Adams, P. J., concurred.