412 P.2d 593

Hazel R. BUTLER, an individual, and Hazel R. Butler, Administratrix of the Estate of Walter E. Butler, deceased, Plaintiff-Appellant,

v.

CALDWELL MEMORIAL HOSPITAL, an Idaho Corporation, Defendant-Respondent.

No. 9561.

Supreme Court of Idaho.

March 28, 1966.

Rehearing Denied April 11, 1966.

Vernon K. Smith and John Hjellum II, Boise, for appellant.

Moffatt, Thomas, Barrett & Blanton and Gerald Schroeder, Boise, for respondent.

438

TAYLOR, Justice.

Hazel Butler, plaintiff (appellant), a frail woman, 47 years of age, had been a patient of Dr. Charles E. Krause for a period of approximately two years prior to the accident here involved. During this time she had suffered from gastroenteritis, had been surgically treated for gastric ulcer and had also been treated for duodenal ulcer. She was in a neurotic condition and complaining of pain. A synthetic analgesic narcotic called leritine had been prescribed and administered for the pain. Early in 1962 she was suffering from malnutrition and menstrual cramps. The doctor was apprehensive of possible addiction to the drug. At his direction she was admitted to the defendant (respondent) Caldwell Memorial Hospital for observation at 10:06 p. m. on the night of March 13, 1962. She was placed in a standard hospital room, and in a standard bed equipped with side rails.

The doctor advised the hospital personnel that she was neurotic, that he did not "know what the night would bring," and in his orders directed, "Call me if she complains of pain or restlessness." She was given a sedative (compazine) on admission as ordered by the doctor; at 10:45 she was noted to be quiet; at 11:30 on complaint of chest pain the doctor was notified and at his direction she was given a sedative (sparine) at 11:45; at 12:00 she complained of pain in her lower legs; at 12:30 she complained of

pain from her hips down, and at that time appeared drowsy. The nurse recorded for 1:00 o'clock, "voided—pad changed, flow scant." At 1:30 she was found lying on the floor and was assisted back into her bed. There was a slight laceration on the left side of her chin. At 2:00 o'clock she was complaining of pain in the hips and back and was very drowsy. At this time "soft" shoulder restraints were applied, as directed by the doctor. Dr. Krause examined the patient on the morning of the 14th and did not suspect any hip injury. During the next two weeks Mrs. Butler became mentally ill, experienced hallucinations and was only periodically rational. By March 30th her malnutrition and mental condition had improved. At this time she began to complain of pain in her right hip. X-ray examination on April 3rd revealed a fracture of the neck of the right femur. This was repaired by surgery performed April 9, 1962.

Mrs. Butler brought this action against the hospital, alleging that her injuries were caused by the negligence of the defendant hospital. Specifically, plaintiff contends that the hospital, being advised of her neurotic condition, of the possibility of withdrawal symptoms because of the discontinuance of the administration of leritine, and of her nervousness and restlessness, should have placed her in a bed with raised side rails extending from head to foot, or placed restraints upon her person, or provided continuous supervision.

Upon trial, after plaintiff had rested her case, the court granted defendant's motion for an involuntary dismissal. Plaintiff brought this appeal from the judgment entered thereon.

"The generally accepted requirement is that a private hospital conducted for gain must, in the care of its patients, exercise such reasonable care and attention for their safety as their mental and physical condition, if known, may require." Hayhurst v. Boyd Hospital, 43 Idaho 661, at 669, 254 P. 528, at 529 (1927).

"Although a private hospital is not an insurer of a patient's safety, it must exercise such reasonable care toward a patient as his known condition may require." 41 C.J.S. Hospitals § 8c(3)

The defendant contends that plaintiff's proof was insufficient to show that the plaintiff's injury occurred in the hospital. There was some evidence of stumbling and bruises on her lower legs before she entered the hospital, and that she had suffered a fall at home on March 13th before going to the hospital. However, there was evidence of a fall in the hospital between 1:00 and 1:30 o'clock in the morning of the 14th of March. Whether this fall was from the bed or from a standing or walking position, remains in the realm of conjecture. The evidence as a whole would support a finding by the jury that the injury occurred as a result of her fall in the hospital. The re-

marks of the trial judge at the time he granted defendant's motion for dismissal indicate that he was of the opinion that the evidence was sufficient on that point to take the case to the jury, and that he based his ruling upon the insufficiency of the evidence to establish negligence on the part of the defendant.

The orders given by plaintiff's doctor at the time she was admitted and during the course of the night prior to her fall were strictly complied with by the attending nurses. The medication administered pursuant to such orders was sedative in character and tended to quiet the patient. The doctor testified that the nurses would have authority, in their discretion, to raise the rails. The plaintiff testified the rail, from the head to the midsection, on the side from which she entered the bed, was raised after she was placed therein. The record is silent as to the bed rail on the far side of the bed, or whether that side was against the wall. The manager of the hospital testified that bed rails were always kept in raised position at night. There was no evidence that any failure to raise the rail along the lower half of the bed would create an unreasonable risk of harm to plaintiff. There is no evidence as to where, with reference to the bed, plaintiff was found on the floor. The doctor testified that the room and the bed in which she was placed were appropriate and sufficient for her care; that he did not consider any restraints upon her person were necessary, and

he did not want any to be placed upon her, nor did he order a special nurse or continuous supervision. His only order in that respect was that he be called if she complained of pain or restlessness. This same doctor had treated plaintiff in the hospital on previous occasions and knew her tolerance of, and reaction to, the medication given. The doctor testified that application of restraints tend to disturb and upset a conscious patient; that he did not think restraints were indicated at the time of her admission. However, the doctor did order "soft" restraints applied after she was discovered out of bed.

Dr. Baranco, an orthopedic surgeon, who performed the surgery for repair of the fractured femur on April 9th, and plaintiff's physician, Dr. Krause, both testified that the imposition of restraints was in the sole jurisdiction and discretion of the physician in charge; that nurses or hospital attendants do not have authority to decide whether or when restraints are to be used.

Dr. Krause further testified that he did not advise the hospital attendants that plaintiff was emotionally or mentally ill or that she was suffering from narcotic addiction, nor did he advise them that she was or might be convulsive. Except for drowsiness, the record shows the plaintiff was conscious and rational, and that she was quiet, except when complaining of pain.

Thus, we find no evidence in the record of negligence on the part of the

hospital nurses or attendants. If there was negligence in the failure to provide a special nurse, or constant supervision, or to apply restraints, such would not be negligence on the part of the hospital in view of the orders given by the attending physician and the undisputed evidence that such precautions were within the ambit of the doctor's authority and responsibility, not that of the hospital.

 contends that the doctrine of res ipsa loquitur should be applied in this case, and that the application of the doctrine would supply any defect or want of direct evidence of negligence so as to render the question of actionable negligence one for the jury to determine. We do not find the doctrine applicable here. The evidence does not tend to show that common knowledge and experience indicates that the accident would not have occurred in the absence of negligence, at least on the part of the hospital. The want of restraints and continuous supervision were not under the control of the hospital. Hale v. Heninger, 87 Idaho 414, 422, 393 P.2d 718 (1964); Potter v. Dr. W. H. Groves, L. D. S. Hosp., 99 Utah 71, 103 P.2d 280 (1940). In this case it is just as probable that the plaintiff got out of bed of her own volition, and thereafter fell, as it is that she unknowingly fell out of bed. Neither restraints nor constant supervision were ordered by the physician in charge.

██ Plaintiff emphasizes the evidence that her husband told the nurses upon her admission that they should take her cigarettes away from her, else she might burn herself, and that they did so and brought her one at a time when she requested, and remained with her while she smoked it. Such evidence would not tend to warn defendant that plaintiff might fall out of bed, or that constant supervision or restraints were necessary or advisable. Normal people often burn themselves by smoking in bed.

The judgment of dismissal was proper. Hayhurst v. Boyd Hospital, 43 Idaho 661, 254 P. 528 (1927); McDonald v. Foster Memorial Hospital, 170 Cal.App.2d 85, 338 P.2d 607 (1959); Welsh v. Mercy Hospital, 65 Cal.App.2d 473, 151 P.2d 17 (1944); Maki v. Murray Hospital, 91 Mont. 251, 7 P.2d 228 (1932); Carrigan v. Roman Catholic Bishop, 104 N.H. 73, 178 A.2d 502 (1962); Memorial Hospital, South Broward Hosp. Dist. v. Doring, Fla.App., 106 So.2d 565 (1958); Marsh v. City of St. Petersburg, Fla.App., 106 So.2d 567 (1958); 41 C.J.S. Hospitals § 8(3).

██ Plaintiff assigns as error the rejection of her proffered exhibits 3A and 9. These exhibits contained written statements by Dr. Krause, made when the fracture of the femur was discovered, that it probably occurred at the time of her fall in the hospital. The doctor as a witness refused to give an opinion as to when the fracture oc-

curred. The exhibits were admissible since they tended to impeach the witness by proving prior statements inconsistent with his present testimony. I.C. § R9–1207; IRCP rule 43(a). However since the decision, both in the trial court and here, is based upon a want of evidence of negligence on the part of defendant, not upon a want of evidence that the injury was received in the hospital, the error in rejecting the exhibits is not reversible.

Judgment affirmed.

Costs to respondent.

McFADDEN, C. J., and McQUADE, ·SMITH and SPEAR, JJ., concur.