[Civ. No. 24171. Fourth Dist., Div. One. July 6, 1982.]

MAGDA EMERICK, Plaintiff and Appellant, v.
RALEIGH HILLS HOSPITAL - NEWPORT BEACH et al., Defendants and Respondents.

**COUNSEL**

Michael S. Besikof, Louis Rifkind and Richard Scott Lysle for Plaintiff and Appellant.

Michael J. Fitzgerald, Tuttle & Taylor, Harold J. Kwalwasser, Ronald C. Peterson and John J. McCauley for Defendants and Respondents.

**OPINION**

**STANIFORTH, Acting P. J.**—Plaintiff Magda Emerick's suit (filed June 11, 1974) seeks damages for injuries sustained when a wash basin on which she was sitting or leaning fell down. Emerick waived a jury and the trial court bifurcated the liability and the damage phases of the lawsuit. On trial of the liability issue, the court found no negligence on the part of defendant Raleigh Hills Hospital. Emerick appeals that judgment.

FACTS

In June 1974, Emerick was admitted to Raleigh Hills Hospital (Hospital), Newport Beach, for alcoholic rehabilitation. After a 10-day

sojourn and 1 day before her discharge, she was injured in an accident involving a falling bathroom sink.

The trial court found, and we accept as fact, that Emerick while a patient at the Hospital went to the bathroom next to her room where there was installed a Crane Norwich free standing, cantilevered sink affixed to the wall. One-hundred twenty-five pound Emerick sat or leaned on the sink while applying her makeup, creating vertical pressure on the sink which caused it to partially detach and drop. Emerick fell to the floor and seriously injured her lower back. Hospital employees Michael Dunn and Lowell Copeland came to her aid and later repaired—reinstalled—the bathroom sink. Emerick told Dunn that she had been sitting on the sink while applying her makeup to the right side of her face (the mirror was located on the wall *to the left* of the wash bowl) when the sink detached from the wall, collapsed and caused her to fall. Dunn testified water was flowing from the sink which was partially detached from the wall. The Hospital employees immediately repaired the sink but kept no record of the nature of repairs or changes made in reinstalling the sink.

The trial court found that some 14 months earlier a patient, Sissy Finger, had placed her weight on the bathroom sink in one of the rooms in the Hospital and the sink had partially collapsed but there were no injuries.

It was not until January 18, 1980, four and one-half years after the lawsuit was filed, that Emerick commenced discovery proceedings by propounding her first set of interrogatories. Certain of the discovery requests were denied as untimely and in violation of California Rules of Court, rule 222. Emerick was authorized to inspect the exterior of the sink some 30 days before the trial. The trial court refused Emerick's request that the inspection invade the hospital wall to determine the present mode of installation of the sink.

The Hospital "sink expert" testified a person could lean (not sit) on a sink so long as no more than 20 to 50 pounds' pressure was exerted on the front of it. An expert from the Crane Sink Company said a sink such as here involved is commonly used in sports stadiums, public areas, etc., and it is acceptable for children to climb on them and adults with varying body weights (up to 300 pounds) to lean on them. Emerick's expert testified—based on actual tests—the subject sink, if properly installed, would withstand vertical loads of 250 pounds or more.

Emerick did not personally appear at trial, but portions of her deposition were introduced as evidence of how the accident occurred. Emerick also relied upon the deposition of Sissy Finger to prove the facts of the prior incident on the same bathroom fixture.

The court concluded the Hospital had the duty to exercise ordinary care in the management of its premises in order to avoid exposing persons thereon to an unreasonable risk of harm. The court further found it was not foreseeable Emerick would misuse the sink by sitting on it or applying excessive vertical pressure to the front of it. The court found no negligence by the Hospital resulting in plaintiff's injuries.

DISCUSSION

I

■ When a charge is made of lack of substantial evidence, our duty on appeal is to determine whether substantial evidence supports the challenged finding. It is not our function to reweigh the evidence and to analyze the factual conflict. Before we are authorized to reverse a judgment on the ground of insufficiency of the evidence, it must appear from the record that after accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party that may be drawn therefrom and excluding all evidence in conflict therewith, the evidence in support of the findings is so barren, so slight, so tenuous, that it does not create real and substantial evidence to support the judgment. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) The foregoing rule would compel affirmance except for the fact that Emerick's claim of error does not rest solely on the insufficiency of the evidence; Emerick contends the trial court applied an erroneous standard of care in view of her status as a patient in an alcoholic rehabilitation hospital and her undisputed diminished capacity. She further contends the trial court further erred in ruling the doctrine of res ipsa loquitur inapplicable because the accident was caused by Emerick's misuse of the sink by sitting on or otherwise applying excessive vertical pressure to the front of the sink. We examine seriatim these and other citations of error.

II

In support of Emerick's theory the Hospital was under a higher standard of care to oversee the safety of its patients as opposed to, for

example, an owner of an apartment complex, the trial court admitted evidence concerning the nature of Emerick's alcoholic rehabilitation program such as medication, treatment prescribed, etc. as bearing on the issue of contributory negligence and for the standard of care owed. The trial court concluded the accident in question was not related to a particular condition of the patient and that the duty of the Hospital was a relative duty, not an absolute one, to exercise reasonable care.

■ As a general rule of law, a private hospital owes its patients a duty of protection and must exercise such reasonable care towards a patient as his or her known condition may require. On the other hand, a private hospital is not an insurer of the patient's safety and the standard of care required is limited by the rule that no one is required to guard against or take measures to avoid that which a reasonable person under the circumstances would not anticipate as likely to happen. (*Welsh* v. *Mercy Hospital* (1944) 65 Cal.App.2d 473, 478 [151 P.2d 17].)

■ In this case, the Hospital knew that Emerick was admitted for alcoholic rehabilitative treatment. She was placed there for a program of detoxification, aversion therapy and withdrawal. She was treated with hypno-sedatives and drugs including sodium luminal, Dilantin, Dalmane, Valium and others. This known condition and the course of care and treatment given required a higher degree of care than that owed by land occupiers generally. That such a patient might lean on, hold on or place her weight on a bathroom fixture should be anticipated in a setting where patients are in all stages of alcoholic delusion, DT's and alcoholic detoxification. The duty of care to be imposed on an alcoholic rehabilitation hospital is to safeguard the patient from conditions including fixtures on the premises, that by reason of the patient's particular specie of incapacity may become dangerous to life or health of this unique class of patients.

A rule more fitting to the facts of this case is expressed in *Wood* v. *Samaritan Institution* (1945) 26 Cal.2d 847 [161 P.2d 556], where the California Supreme Court held hospitals have a duty to be especially protective of their alcoholic patients. In *Wood* the defendant operated a sanitarium for the cure of chronic alcoholics. Wood was a patient at defendant's facility and was injured when she leaped through her second-floor bedroom window. Wood claimed the defendant was negligent in failing to guard and restrain her and in failing to put bars on the window of her bedroom. The Supreme Court, reversing a judgment for the defendant, said: "'The extent and character of the care that a

hospital owes its patients depends on the circumstances of each particular case. A private hospital owes its patients the duty of protection, *and must exercise such reasonable care toward a patient as his known condition may require.* The measure of duty of a hospital is to exercise that degree of care, skill and diligence used by hospitals generally in that community, and required by the express or implied contract of the undertaking. . . . *The duty of care imposed on a hospital extends to safeguarding the patient from dangers due to mental incapacity. . . .*'" (*Id.* at pp. 851-852; italics added.)

Due to the known diminished capacity of its patients, an inability to exercise care for their own safety, this rule of reasonableness requires an alcoholic rehabilitation hospital to use greater care towards its patients than does an ordinary landowner, such as an apartment owner or a motel operator.[1] (See also *Meier* v. *Ross General Hospital* (1968) 69 Cal.2d 420, 424 [71 Cal.Rptr. 903, 445 P.2d 519]; *Vistica* v. *Presbyterian Hospital* (1967) 67 Cal.2d 465, 469 [62 Cal.Rptr. 577, 432 P.2d 193].)

In *Vistica* v. *Presbyterian Hospital, supra,* 67 Cal.2d 465, 469, the court said: "[T]he duty imposed by law on the hospital is that it must exercise such reasonable care toward a patient as his mental and physical condition, if known, require . . . ."

The decision of the trial court articulates and applies an incorrect standard of care—that standard of care applicable to ordinary landowners. It failed to take account of Emerick's known debility. An alcoholism rehabilitation facility has notice of the patient's vulnerability due to the mental incapability, unpredictability, and irrationality, commonly associated with alcoholics undergoing withdrawal treatment, such a facility must do more to protect their patients than that expected of an ordinary landowner.

■ Emerick was not the "average" "reasonable" hospital patient; she was a recovering alcoholic; she was heavily medicated, disoriented and unable to care for herself. That a person in such state might need to lean against or on a sink (particularly when invited to do so by place-

---

[1] Although often phrased in the short cut terminology "higher standard" or "higher duty" of care, this rule simply means that what is reasonable in one set of circumstances may not be reasonable in another. The "duty" remains constant—that is—the duty is to exercise reasonable care under the circumstances.

ment of the mirror on the wall to the left, *not the rear*, of the sink) is reasonably foreseeable. The earlier accident—albeit 14 months before —placed the Hospital on notice that the sink[2] was not properly installed and would not sustain the weight of a 125-pound woman leaning or sitting on it. The admitted knowledge of this previous accident placed the Hospital on notice—if common sense would not so advise—that (1) patients need to and do lean heavily on occasion on bathroom sinks, and (2) the particular sink was not properly installed since it fell as a result of a not unreasonable pressure.

All expert testimony in this case—excepting that of the Hospital witness—comport with common knowledge and experience, to wit: a properly installed sink would not fall under the pressures applied by Emerick. That same common sense compels the conclusion that a sink that would fall under a 20 to 50 pound pressure was improperly installed.

### III

Emerick next contends the trial court erred in determining that she voluntarily misused the sink, and therefore the doctrine of res ipsa loquitur did not apply. Emerick points to uncontroverted evidence which demonstrates the hospital had patients suffering from mental and physical disorders, disorientation and confusion due to alcoholism and other drug and alcohol related mental states. Specifically, Emerick asserts, when admitted to the hospital she exhibited severe symptoms of alcohol addiction including tremors, discoordination and nystagmus. After admittance she underwent a rigorous program of detoxification and treatment which included the administration of hypno-sedative drugs. She argues the fact the mirror was placed to the left of the sink invited patients to put their body weight on the sink in order to view themselves in the mirror. Finally, she concludes a properly installed sink should have been able to bear the weight of a person leaning upon it. From the foregoing, Emerick contends the doctrine of res ipsa loquitur should apply.

■ In order to trigger the application of the res ipsa loquitur doctrine, certain preliminary facts must be established. In the landmark decision of *Ybarra v. Spangard* (1944) 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258], the court said: "The doctrine of res ipsa loqui-

---

[2] Analysis of Sissy Finger's deposition warrants the conclusion that this was the very same sink that fell under Emerick's weight.

tur has three conditions: '(1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.'" The doctrine was further explained in *Shahinian v. McCormick* (1963) 59 Cal.2d 554, 559 [30 Cal.Rptr. 521, 381 P.2d 377]: "The question is one of probabilities and the doctrine 'is applicable where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the one responsible.'"

We start with the premise that the requirement of "exclusive" control is not an absolute one. A plaintiff is not to be deprived of the benefit of the res ipsa loquitur presumption because of a "voluntary act or contribution" on her part. (*Meier v. Ross General Hospital, supra,* 69 Cal.2d 420, 423.) The trial court ruled res ipsa loquitur did not apply because the accident was caused by Emerick's voluntary action of sitting on or otherwise applying vertical force to the sink. According to the trial court the accident was, therefore, caused by Emerick's misuse of the sink. The difficulty with this reasoning is it ignores decisional law to the effect that a plaintiff may rely on res ipsa loquitur even though she participated in the events leading up to an accident, if her conduct was not the primary cause of the accident. (*Hercules etc. Co. v. Automated etc. Corp.* (1957) 151 Cal.App.2d 387, 396 [311 P.2d 907].)

In *Kopa v. United States* (D.Hawaii 1964) 236 F.Supp. 189, decedent was a patient at an army hospital. He was 83 years old, very feeble, suffering from physical deterioration, senility, pneumonia, and was incompetent. While being bathed in a bathtub by one of the hospital personnel, the decedent, during a mental aberration or fit, turned on the hot water valve of the bathtub and scalded himself fatally. The court upheld the verdict finding the defendant hospital negligent in allowing such hot water to be standing in the hot water pipes leading to the tub. The court further held that res ipsa loquitur was applicable, citing California authority. The court stated: "No satisfactory explanation was given by the defendant for having water at this temperature thus made so easily accessible to the tub and so dangerously prone to injure patients, even normal ones, let alone one as helpless as Kopa." (*Id.,* at p. 192.)

It can be said with equal force here that no satisfactory explanation is offered by the Hospital as to why a properly installed sink would fall under the admitted facts here. There is competent evidence, and common sense compels its belief, that a properly installed bathroom sink will withstand more than 20 to 50 pounds of pressure. Thus the inference is that the accident would not have occurred absent a defective installation of the sink. This evidence gives rise to the reasonable inference of neglect, the *sine qua non* to the application of res ipsa loquitur. Furthermore, a reasonable and prudent hospital operator receiving and treating alcoholics could foresee bodies of much greater weight than 50 pounds leaning on a bathroom sink for support. The very nature of this accident compels in light of past experience, "the conclusion it was probably the result of negligence by someone."

Finally this sink (its installation and maintenance) was exclusively within the control of the Hospital. While some voluntary action (leaning or sitting) was admitted by the patient, such use is to be expected and would not cause the accident "but for" a defective installation. The reason for the rule was succinctly stated in *Ybarra* v. *Spangard, supra*, at page 490, where it was said: "If the doctrine is to continue to serve a useful purpose, we should not forget that 'the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person.' (9 Wigmore, Evidence [3d ed.], § 2509, p. 382 ....)"

We conclude that the *Ybarra* v. *Spangard, supra*, 25 Cal.2d 486, preconditions to the application of res ipsa loquitur have been met and the reason for the rule's application are manifest here. The trial court erred in refusing to apply this doctrine—with its procedural consequences—to the facts of this case.

## IV

Finally, Emerick contends in view of the *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393] rule, the presence of contributory or comparative negligence is no longer a bar to the application of res ipsa loquitur. She points to the persuasive authorities set forth in 58 American Jurisprudence Second, Negligence, § 481, page 58. We have found present the required preconditions to the application of the doctrine of res ipsa loquitur and

therefore conclude her contention is correct and applicable here. Negligence is not a bar to the application of the res ipsa loquitur doctrine in jurisdictions such as California that adhere to the comparative negligence rules. (58 Am.Jur.2d, Negligence, § 481, p. 58; Prosser, *Res Ipsa Loquitur in California* (1949) 37 Cal.L.Rev. 183, 201.)

## V

■ There is one further reason, if needed, for reversal of the judgment. The trial court refused to allow Emerick to examine the interior structure of the wall behind the culprit sink. Whether this examination would disclose relevant evidence on the issue of defective installation we do not know. But Emerick should not have been precluded, out of hand, from seeking evidence of a defective installation. The Hospital failed to keep records of what was done in reinstallation or what its employees found regarding the cause for the falling sink. Reasonable discovery by Emerick should have been allowed including structure analysis.

Judgment reversed.

Work, J., and Cazares, J.,* concurred.

A petition for a rehearing was denied July 29, 1982, and respondents' petition for a hearing by the Supreme Court was denied September 2, 1982.

---

*Assigned by the Chairperson of the Judicial Council.