Sidney Squire, J.
Claimant seeks to recover $100,000 for the conscious pain and suffering and wrongful death of the decedent, Susan Rae Berg.
Brooklyn State Hospital is a facility owned, operated and maintained by the defendant, the State of New York. On November 7, 1958 the decedent, 28 years old, was a patient in Ward 14 thereof. On said date, from 3:00 p.m. to midnight, there were only two of defendant’s employees working in that ward in which there were over 100 mental patients. The two employees were an unnamed supervising nurse and Tina Rose, an attendant. During the immedately preceding tour of duty ending at 3:30 p.m., there had been four employees in attendance for said patients.
Between the approximate hours of 5:00 and 7:30 p.m., the decedent, in apparent good health, and others in the day hall of said ward were left unattended while watching television. Tina Rose was caring for patients in other rooms with respect to their needs prior to bedtime. No State employee was in said hall for over two hours. In that day hall there were radiators and risers, all hot, throughout the day. Said radiators and risers, were and had been uncovered for years prior thereto, to the knowledge of the defendant.
At about 7:30 that evening when the lone attendant was undressing the decedent, there were discovered for the first time extensive wounds that looked like burns on the girl’s back. In the affected areas the patient’s dress had adhered to her body. A physician was called. He found two linear areas on the patient’s back, the right extending from the upper scapula line to the waist and the left from the lower scapula region to the lower gluteal. “ The areas were about two inches wide, and were partially denuded, and partly vesicular in appearance, with surrounding erythema. The impression was that of second to third degree burns.”
In a subsequent memorandum made in the regular course of the hospital’s business, Dr. Harry Cohen, a physician employed by the defendant, reported to his superiors that “ From the appearance of the burns, it appeared that they had occurred by the patient leaning against heating pipes, rising in the room from the floor to the ceiling.”
On November 8,1958, the day after the occurrence, the patient was transferred to Building No. 10 for medical treatment. Her injuries were diagnosed and Furacin dressings were applied; 600,000 units of penicillin and 500 milligrams of vitamin C were given to her daily. On November 8 and 9 she also received *356 demerol and thorazin. Dressings were applied daily. The burns were not healing.
On November 20 she submitted to surgery, for which as a preoperative procedure, she was given demerol again. A general anesthesia was administered, after which the burns and surrounding areas were cleaned with phisohex and later, aqueous solution of zyphiran. A debridement of the necrotic tissue of the burned area (three separated areas) on the back and buttocks was done to permit the growth of granulation tissue. This was followed by pressure of the denuded area with hot laps. The area was finally cleaned and the denuded area was packed with fine mesh gauze, superimposed with several four-by-four pads and thick combines. Those dressings were held to the body with the pressure of elastoplast.
The patient expired on November 21, 1958, the day after said surgery. The Medical Examiner of Kings County reported the decedent’s cause of death as “ bronchial pneumonia, pulmonary edema, second and third degree burns on torso and extremities.”
The young lady had been admitted to Brooklyn State Hospital on October 30,1948 when her condition was diagnosed as “ psychosis with mental deficiency — episode of excitement and confusion, imbecility.” Her hospital file contained a copy of the commitment papers including Form 472D. On line 133 thereof, the following appears: “ Is the patient likely to injure himself (herself)f — Yes. (Space) To injure others? — Yes”.
Throughout the 10 years of her hospitalization at the same place the afore-quoted diagnosis was never changed. The hospital records proved that the girl was in the habit of “ picking ” on her feet and legs, causing sores and infections to break out. To stop this habit, the patient had to be restrained by the use of a camisole.
About a month prior to the unfortunate burning episode, the decedent had been receiving thorazin from October 1 until October 14, 1958. On the latter date, thorazin was discontinued and instead she began to receive 50 milligrams of vesprin three times daily. Because of the side effects of said drug, this was reduced to 25 milligrams in the morning, the same dose at noon and 50 milligrams in the evening. Dr. Cohen described these side effects as “ she became rather unsteady on her feet ” and “ she also showed lack of associated movements in moving around; that is, there was a certain stiffness in the way she moved — a paucity of movement — what we call a Parkinsonism ”.
All of the foregoing facts arc found by me. The defendant had knowledge of the decedent’s mental condition, her physical *357 deficiencies, her proclivity for self-injury, the side effects of the drugs administered, the uncovered heating risers in the day hall and the other factors heretofore enumerated. The occurrence was reasonably foreseeable.
The claimant sustained her burden of proving that under the facts and circumstances at bar, the State did not take reasonable precautions to which the decedent was entitled. The defendant has not sustained its burden of proving the decedent’s contributory negligence.
The young lady was imbecilic. She could not and did not give any account of the manner in which or the means whereby she was so painfully injured. The principle of law enunciated in death cases on a highway without eyewitnesses should be applicable at bar. In a case such as this, the claimant cannot be held 11 to the high degree of proof required in a case where the injured person may take the stand and give his version of the happening of the accident ”. (Noseworthy v. City of New York, 298 N. Y. 76, 80.)
Each case must be determined on the causally related specific facts at the time of and prior to the occurrence complained of. At bar, the decedent and others were unattended for an inordinate length of time. The defendant did not give the decedent adequate and appropriate supervision. Eeasonable care was not exercised by the defendant to protect and safeguard the decedent. The defendant’s conduct was negligent and was a proximate cause of the decedent’s injuries, her pain, suffering and death.
The defendant’s legal position on this trial and in its memorandum subsequent thereto, would require proof by direct evidence. Such posture is not a licit approach to the problem before us. The defendant’s liability herein rests on circumstantial evidence which was more than sufficient for the legal conclusion that claimant’s proof preponderated. The facts here warrant the inferences of negligence and proximate cause as the only ones that fairly and reasonably can be deduced. (Boyce Motor Lines v. State of New York, 280 App. Div. 693, 696, affd. 306 N. Y. 801; Markel v. Spencer, 5 A D 2d 400, affd. 5 N Y 2d 958.) The decedent’s pain and suffering have been proven and her damages therefor will be assayed herein.
O’Brien v. State of New York (33 N. Y. S. 2d 214) was written by Judge Dye (now of the Court of Appeals) when a Judge in this court. There, a patient in another mental hospital sustained severe burns when entangled in a framework erected around a hot steam radiator. The facts differ from our case but the *358 principles of law therein are notably apposite. In the middle of page 216, Dye, J., declared: “ Here an element exists which is missing from the ordinary social relationship. One of the parties has no judgment or reason capable of controlling her behavior because of mental illness which is known to the other, and its vagaries fully appreciated — the one was in the care of the other, involuntarily and helplessly dependent. To her the State owed a duty measured by the circumstances of her helplessness to exercise prudence and good judgment and her propensity to do the violent and unexpected act.”
We are further told (bottom, p. 215) that the State “ became chargeable, not with that degree of care commensurate with dealing with prudent and reasonable persons under ordinary circumstances fraught only with such hazards as the careful and prudent person can reasonably anticipate as liable to occur, but. with that degree of care which places upon the State the obligation to furnish their unfortunate wards suffering from mental disorders every reasonable precaution to protect them from injury, either self-inflicted or otherwise. Shattuck v. State, 166 Misc. 271, 2 N. Y. S. 2d 353, affirmed 254 App. Div. 926, 5 N. Y. S. 2d 812; Martindale v. State, 244 App. Div. 877, 281 N. Y. S. 686, affirmed 269 N. Y. 554, 199 N. E. 667.”
Claimant’s jurisdictional facts must be noted. Decedent was domiciled in Kings County at the time of her demise. On January 27, 1959 her mother, Blanche Berg, was appointed administratrix of the goods, chattels and credits of said decedent and limited letters Avcre awarded to said claimant by the Surrogate’s Court of said county. In such capacity, the mother is the claimant herein. The claim (pleading) herein was filed and served on February 18, 1959.. Each of said acts was timely. The claim was not assigned and has not been submitted to any other court or tribunal for audit or determination.
The motions of the defendant (on which decisions were reserved) to dismiss the claim, made at the close of claimant’s proof and at the conclusion of the entire trial, are noAv denied.
The defendant is liable to the claimant for the following reasonable expenditures as a consequence of its patient’s death: $155 for the funeral; $375 for the headstone and $60 for miscellaneous burial services, aggregating $590, with interest thereon from November 21, 1958, the date of death. No other sum is awarded for the death because there was no proof of any other pecuniary loss. There was no evidence of medical malpractice although it was averred in claimant’s pleading.
For the decedent’s conscious pain and suffering from November 7, 1958 to November 21, 1958, the claimant is entitled to *359 recover $15,000 from the defendant. Accordingly, claimant shall have judgment for $15,590, with interest on $590 thereof from November 21,1958 to the date of entry of judgment herein.
This constitutes the decision of the court on which the Clerk shall enter judgment accordingly.