George Clement KOPA, Deceased, by Mary W. Vasconcelles, Temporary Administratrix, and Mary N. Kopa, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. No. 2161.

United States District Court
D. Hawaii.

Nov. 4, 1964.

Hughes, Alexander & Smart, by John F. Alexander, Honolulu, Hawaii, for plaintiffs.

Herman T. F. Lum, U. S. Atty., for District of Hawaii by Yoshimi Hiyashi, Asst. U. S. Atty., for defendant.

TAVARES, District Judge.

This action was commenced by Mary W. Vasconcelles, Administratrix of the Estate of George Clement Kopa, Deceased, (hereinafter called "Kopa") for pain and suffering resulting from burns sustained while Kopa was a patient at the United States Army Tripler Hospital (hereinafter called "Tripler"), and by Mary M. Kopa, widow of the deceased Kopa for the latter's wrongful death.

Co-plaintiff, Mary M. Kopa (hereinafter called "Mrs. Kopa") died after suit was commenced and before trial and Cooke Trust Co., Ltd., has been substituted for her as Executor of her estate.

Kopa was admitted to Tripler on September 24, 1962, directly by the Veterans Administration for possible cerebral vascular accident. He had been previously hospitalized at Tripler some five years previously but at the time of his admission to Tripler the medical authorities were unable to find any of his records,[1] but they gave him an initial examination which indicated that he was approximately 83 years of age, feeble, partially blinded by cataracts, suffering from general physical deterioration, and suffering from pneumonia, among other things.[2]

---

1. The Court feels it can presume that non-current records would be placed in storage in a manner difficult to find on short notice, or sent to the Veterans Administration. Hence such previous records are not considered as giving notice to Tripler of previous illnesses of Kopa, since it is obvious that hospital personnel at Tripler frequently change.

2. The hospital findings as to the condition of Kopa when admitted to Tripler this occasion, as shown by evidence, included among other things:

    a. Previous medical treatment record unavailable.

    b. Physical examination given at this admission, indicated age 83, patient dis-

This examination alone, of course, gave notice to the hospital authorities of this person's infirmities and inability to care for himself. There were other indications of senility and helplessness, together with some evidence which the Court finds credible, of his being known to strike medicine from the hands of a nurse, or to strike out in protest like a young child; that on occasions he had to be confined or restrained to prevent him from falling off his bed, and at times he was very active and difficult to handle, unusually confused and belligerent; and that he defecated and urinated in bed and had to be constantly cleaned up.

This messiness was given as one of the primary reasons for his being ordered to be given a bath each day, at least after his pneumonia had improved. There was also evidence which the Court finds credible that Kopa talked very little, his reflexes were substantially impaired, at times he would not talk at all, indicating that he was generally non compos mentis. From the evidence it can reasonably be inferred that either his general facilities for sensing or feeling heat and pain were impaired, or that his ability to tell others intelligibly or react normally to heat and pain were impaired.

Due to his advanced age and general physical depreciation a ward attendant, Private Danny W. Sizemore, was assigned to bathe and feed him and also to assist him in his toilet movements.

According to the one alleged eye witness, Sizemore, on November 4, 1962, Sizemore assisted Kopa in his daily bath as Sizemore had done on numerous previous occasions, without incident. This bath was given in a bathtub which Sizemore filled with hot and cold water to the proper temperature out of a faucet or outlet in the tub which the Court infers was at one end of it, as is the case in the ordinary bathtub. The hot and cold water were turned on by means of faucets or knobs which are not described in the testimony, except as being "knobs," according to Sizemore, placed along the middle of one side of the bathtub, rather than at an end of it.

The following is Sizemore's further account of what happened: After Sizemore had finished bathing Kopa and had drained the tub and was about to assist Kopa out of the tub to dry him, Kopa became violent and kicked Sizemore in the testicles and bit him, and Kopa then accidently turned on the hot water into the tub in which Kopa, all naked, was sitting. Sizemore tried to pull Kopa out of the tub and Kopa resisted and by the time he got Kopa out of the tub the hot water released by Kopa's turning the hot water knob had inflicted grave first, second, and third degree burns to the buttocks and feet, and especially the left foot, of Kopa.

The plaintiffs, through Dr. Tomita, introduced expert medical testimony tending to indicate that civilian hospitals in Honolulu considered it standard practice not to give tub baths to patients of Kopa's age and condition, due among other things to the danger of such patients falling and being injured and to lack of sufficient attendants to safely administer such baths. On the other hand the defendant introduced medical and other testimony to show, or contending, that this patient for a substantial number of days previous to the accident, had been, under orders of the attending physician, bathed without incident, that he was bathed for sanitary reasons because of his inability to control his bowels and urine, and that the orderly assigned to Kopa was deemed adequate to protect him against reasonably foreseeable accidents.

From the total picture thus presented, it does not necessarily follow that the attending physician's order at Tripler that Kopa be bathed would be negli-

---

oriented as to time and place so that he could give no past history.

c. Admitted for possible c. v. a.

d. Mal-nourished, suffering from cataracts of both eyes, with indications of pneumonia, general weakness, the patient being able to walk only a few short steps.

gent per se. However, the Court does find that Kopa's known condition and actions preceding the accident fully apprised, or should reasonably have fully apprised, the medical authorities that he was senile, childish and non compos mentis, and that he might act unexpectedly and childishly in a manner that might hurt him, all indicating the need for a high degree of care in protecting him from possible mishaps.

Various accounts of how the accident happened are given by different witnesses, some bordering on hearsay, but even accepting Danny Sizemore's testimony 100% at face value, although the Court is inclined to doubt the veracity of his entire statement,[3] the Court cannot escape the conclusion that the injuries to Kopa were caused by the negligence of the hospital authorities in permitting water at scalding temperature to stand in the hot-water pipe leading directly into the bathtub so that the mere inadvertent turning on of the hot-water knob would instantly run scalding water into the tub.

With a patient in Kopa's condition it seems to the Court that any prudent physician or hospital director should have known that there was a high degree of danger in such a situation, that the hot water might be turned on accidently or otherwise by a patient or an attendant, thereby releasing water of a temperature which would instantly burn the patient if he happened to be in the tub. No satisfactory explanation was given by the defendant for having water at this temperature thus made so easily accessible to the tub and so dangerously prone to injure patients, even normal ones, let alone one as helpless as Kopa. It is in this respect that the Court finds that

there was negligence on the part of the hospital authorities. In this regard, the plaintiffs are aided by the doctrine of res ipsa loquitur,[4] although the Court finds that the same result would be reached independently of such doctrine, since there was one alleged eyewitness to the accident and even his testimony supports the Court's finding of negligence.

It thus becomes unnecessary to determine whether the physicians were negligent in following a practice which Dr. Tomita in effect testified was considered unsafe in other hospitals.

On the matter as to whether these burns were the cause of death, we have another question. The Court finds, despite the testimony to the contrary of the medical witnesses for the defendant, who would, in a close situation, be naturally expected to give the benefit of any doubt to the hospital and themselves as members of its staff, that the burns did in fact contribute in part to the death of Kopa and hence that there is liability on the part of the defendant for his death.

The testimony of Dr. Tomita indicated in substance that the burns could have been a contributing factor inasmuch as the defendant was afflicted with circulatory difficulties which were aggravated by the burns and the treatment thereof, and the subsequent gangrene and amputation of one foot, and also that his being forced to lie flat on his back, when he had previously been ambulatory, contributed to the lung conditions which, as the evidence shows, ultimately became one of the stated causes of death.

The Court feels that it can reasonably be inferred that a man with Kopa's pneumonia or respiratory ailments, who had become so much recovered from them

3. For example, his story of being bitten by Kopa is corroborated by hospital records of the incident, but no mention is made in the hospital records of his being kicked in the testicles, or at all, by Kopa.

4. Berg v. State, 40 Misc.2d 354; 243 N.Y.S.2d 267; Guilliams v. Hollywood Hospital, 18 Cal.2d 97, 114 P.2d 1; Lexington Hospital v. White, Ky., 245 S.W. 2d 927; Minotti v. State of New York, 18 A.D.2d 769, 235 N.Y.S.2d 640; Watson v. Cie Generale Transatlantique, 147 Misc. 697, 264 N.Y.S. 570; Gallachicco v. State, Ct.Cl., 43 N.Y.S.2d 439; Hansen v. United Stores Realty Corp. (1931), 257 N.Y. 584, 178 N.E. 805; Ciacci v. Woolley, 33 Haw. 247, 257–259.

that he was able to ambulate and was being prepared to be sent home, lost a great deal of his will to live when he was then prostrated by a depressing and painful and shocking experience such as the burns and the subsequent amputation and painful treatments attendant thereon, and forced to lie flat on his back so continuously that he even became afflicted with a bed sore on each buttock some seven to nine centimeters in diameter.

Although he was afflicted with heart and other conditions which medical authorities testified could have produced death, the Court believes that in this case there was a substantial contribution and hastening of his death by reason of the burns and the conditions induced by them, including his being forced to lie on his back.

On the issue of contributory negligence raised by the defendant, in view of Kopa's condition of senility and lack of mental competency, the Court finds that he was not guilty of contributory negligence under the circumstances of this case.

As to the question of damages, the Court finds that Kopa, notwithstanding his senile condition rendering him non compos mentis, was capable of suffering pain, and that he did suffer considerable pain, shock and distress from the burns, the treatments, the amputation, and other painful procedures, including the insertion of needles into his flesh for feeding him intravenously and for other treatment purposes, and from being forced to lie helpless on his back when he previously had been partially ambulatory.

For this shock, distress, pain and suffering, the Court finds that he was entitled to substantial damages in the amount of $7,500.00.

Taking up now the question of what damages, if any, should be awarded to Mrs. Kopa or her representative, the Court finds that, notwithstanding his senile condition, and his many ailments, defendant Kopa's life expectancy had he not suffered the injuries above mentioned, due to the negligence of the hospital authorities, would have been at least up to the time of Mrs. Kopa's death. From stipulations and other evidence as to Kopa's retirement and annuity benefits the Court finds that aside from that portion of such income as would have been expended for Kopa's own care and maintenance, his wife would have received approximately $900.00 in support from him had he survived until her death, approximately eight months after Kopa's decease.

Taking into consideration all the circumstances of this case as disclosed by the evidence, including, among other things, Kopa's senile and enfeebled condition, Mrs. Kopa's aged and infirm condition, and the fact that, had Kopa survived and not suffered the burns hereinabove mentioned, his care would still have placed a pretty heavy burden and responsibility on Mrs. Kopa and the family, the Court awards the sum of $2,500.00 for Mrs. Kopa's loss of consortium and/or loss of love and affection, society, companionship and comfort. Adding the aforesaid $900.00 to this $2,500.00, yields a total award in behalf of Mrs. Kopa to the representative of her estate in the amount of $3,400.00.

The foregoing will constitute the Court's findings of fact and conclusions of law. Judgment will be entered (a) in favor of the plaintiff Mary Vasconcelles, Administratrix of the Estate of George Clement Kopa, Deceased, in the said amount of $7,500.00, and (b) in favor of the plaintiff Cooke Trust Co., Ltd., Executor of the Estate of Mary M. Kopa, Deceased, in the said amount of $3,400.00.