GREEN v FEDERAL KEMPER INSURANCE COMPANY

Docket No. 77-2623. Submitted June 7, 1978, at Grand Rapids.—
Decided February 5, 1979. Leave to appeal denied, 406 Mich
964.

Eleanor Green, the mother and guardian of Tanis Green, brought
an action against Federal Kemper Insurance Company seeking
a declaratory judgment that 24-hour private-duty nursing ser-
vices were reasonably necessary for the care of Tanis, who was
injured in an automobile accident, and that the defendant was
obligated to pay for those services under the terms of its
automobile insurance policy. A judgment was entered in favor
of plaintiff, Montcalm Circuit Court, Paul Nicolich, J. The
defendant appeals, alleging error in the admission of testimony
of registered nurses to the effect that private-duty nursing
services were necessary. *Held:*

The trial court did not abuse its discretion by allowing the
testimony of the nurses. They were familiar with nursing care
and each had spent considerable time caring for Tanis Green.

Affirmed.

DANHOF, C.J., dissented. Although he would agree that ad-
mission of the nurses' testimony was not an abuse of discretion,
he would hold that this testimony was not sufficient to raise a
jury question as to whether the nursing services were necessary
in the face of testimony by two of the doctors in charge of the
patient's care that such nursing services were not necessary.
The fact that the witnesses are nurses does not necessarily
indicate that they are competent to give expert opinion on the
necessity for nursing care. It is the physician who is responsible
for making that decision and who bears the responsibility for
his decision. Judge DANHOF is in favor of a rule which would
require physicians to give expert testimony on the necessity of
a particular treatment, in order to more effectively resolve the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 31 Am Jur 2d, Expert and Opinion Evidence §§ 3, 16-18, 26, 27,
30, 31, 105.
[3] 4 Am Jur 2d, Appeal and Error § 399.
[4] 75 Am Jur 2d, Trial §§ 336-343.
[5, 6] 31 Am Jur 2d, Expert and Opinion Evidence §§ 26, 27, 95, 103,
105.

issues involved and further the goal of the no-fault automobile insurance statute, which is to avoid litigation.

OPINION OF THE COURT

1. WITNESSES — EXPERT WITNESSES — NURSES — NECESSITY FOR NURSING SERVICES.

   A trial court did not abuse its discretion in allowing testimony by registered nurses regarding the necessity for 24-hour private-duty nurses to properly care for a victim of an automobile accident, in an action to enforce payment for such services under an automobile insurance policy, where each of the nurses testifying was familiar with nursing care and had spent considerable time caring for the victim.

2. WITNESSES — EXPERT WITNESSES — NURSES — NECESSITY FOR NURSING SERVICES.

   A trial court did not abuse its discretion in allowing a private-duty nurse who had witnessed a patient's breathing problems to testify as to whether the patient would have stopped breathing if a private-duty nurse had not been present.

3. APPEAL AND ERROR — PREJUDICE — TESTIMONY — WAIVER.

   A party who has attempted to draw the Court of Appeal's attention to an instance of allegedly prejudicial testimony but who has not stated who gave the testimony or supplied the Court with any transcript reference so that it could be easily located has thereby waived any prejudice which the testimony may have caused.

DISSENT BY DANHOF, C.J.

4. WITNESSES — EXPERT WITNESSES — EVIDENCE — SUFFICIENCY — JURY QUESTION — NURSES — DOCTORS — NEED FOR SERVICES.

   *Testimony by three nurses that the services of private-duty nurses were necessary to properly care for an accident victim was not sufficient to raise a jury question as to whether the services were reasonably necessary in the face of testimony to the contrary by two qualified, unbiased physicians who had been caring for the patient.*

5. WITNESSES — EXPERT WITNESSES — NURSES — NEED FOR SERVICES.

   *The practice of nursing does not include acts of medical diagnosis or the prescribing of a medical remedy, treatment or medication; therefore, the fact that a witness is a nurse does not necessarily indicate that the witness is competent to give*

expert testimony on the necessity for providing a patient with 24-hour private-duty nursing services.

6. WITNESSES — EXPERT WITNESSES — PHYSICIANS AND SURGEONS — NURSES — NEED FOR SERVICES.

   Testimony regarding the necessity for providing a patient with private-duty nurses should come from physicians rather than nurses.

*Rensberry & Foster, P.C.* (by *Richard G. Bensinger*), for plaintiff.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells, Kenneth L. Block* and *Don V. Souter*), for defendant.

Before: DANHOF, C.J., and V. J. BRENNAN and R. H. CAMPBELL,* JJ.

R. H. CAMPBELL, J. After plaintiff's daughter, Tanis Green, had been hospitalized for injuries she had received in an automobile accident, plaintiff filed suit in Montcalm County Circuit Court claiming that private duty nurses were reasonably necessary for her daughter's care and that under MCL 500.3107; MSA 24.13107 defendant was obligated to pay for their services. A jury found that such services were reasonably necessary and that defendant should bear their cost. Defendant now appeals.

Defendant first contends that reversible error was committed when the trial court allowed registered nurses to testify that in their opinion private duty nurses were reasonably necessary for the care of Tanis Green. It is this Court's opinion that the trial judge did not abuse his discretion by allowing this testimony. Plaintiff's expert wit-

* Circuit judge, sitting on the Court of Appeals by assignment.

nesses did not prescribe medical treatment nor attempt any diagnosis of the patient. Each of these witnesses had a sound nursing education and considerable experience and each was familiar with the specialized treatment and care that a nurse had to provide a patient. Each witness had also spent a considerable amount of time acting as a private nurse for Tanis Green and thus each was aware of the amount of time and effort that was needed to provide her with the proper level of nursing care. Because these nurses were familiar with nursing care and knew from experience how much time had to be expended in properly caring for Tanis Green, this Court does not believe that the trial court abused its discretion by allowing them to testify that private nurses, who would be constantly on duty, were necessary to properly care for the patient. Although the defendant had doctors who testified that private nurses were not necessary in order to give reasonable care to Tanis Green, it was for the jury to weigh the evidence and render a verdict.

Defendant's second contention of error is that John Vander Laan should not have been allowed to state that in his opinion Tanis Green would have stopped breathing if a private nurse had not been constantly on duty. It is this Court's opinion that the trial court did not abuse its discretion by allowing such testimony. The witness was a qualified registered nurse who had cared for the patient. He testified that she occasionally suffered from severe spasms and that on one occasion he had actually seen her turn blue because she had had trouble breathing. Based on this actual experience with the patient's breathing problems, this Court believes that the witness was qualified to give his opinion on whether the patient would

have stopped breathing if a private duty nurse had
not been present.

Defendant's final contention of error is that it
was prejudiced when plaintiff's witnesses testified
about the deaths of several other patients in the
hospital. Defendant has attempted to draw our
attention to one such instance by noting that there
was "testimony that one person died". Defendant,
however, has not stated who gave such testimony
nor has it supplied this Court with any transcript
reference so it could be easily located. As a result,
it is this Court's opinion that defendant has
waived any prejudice which this remark may have
caused. See *Mitcham v Detroit,* 355 Mich 182; 94
NW2d 388 (1959).

Defendant also argues that it was prejudiced
when John Vander Laan testified about the death
of one of his patients. Defendant did not object to
this line of questioning and it is this Court's
opinion that this issue has not been preserved for
appeal.

The jury's verdict is affirmed.

V. J. BRENNAN, J., concurred.

DANHOF, C.J. *(dissenting).* On July 25, 1975,
plaintiff's daughter Tanis Rae Green received seri-
ous injuries when the automobile in which she was
riding was involved in an accident. Since then, she
has been and still is completely comatose. Plaintiff
commenced this suit seeking a declaratory judg-
ment to the effect that 24-hour private duty nurs-
ing care is a reasonably necessary medical service
for the care of Tanis and requiring defendant to
reimburse her for the costs of this service under
the provisions of its no-fault automobile insurance
contract, see also, MCL 500.3107(a); MSA
24.13107(a). The jury found that private duty

nurses were reasonably necessary and defendant appeals claiming that reversal is required because the court erroneously admitted into evidence certain opinion testimony as to the necessity of these services.

Following the accident, Tanis was taken to Greenville Memorial Hospital and then to the emergency room at Blodgett Hospital. There she came under the care of her own physician, Dr. Grin. She had suffered a severe brain injury and surgery was performed to remove a small clot. A bone was also removed to allow the injured brain room to swell. Since Tanis was in a coma, she was provided with a nasal-gastric feeding tube, a tracheotomy tube and a catheter to assist her body functions.

On August 11, 1975, Tanis was transferred to Kent Community Hospital, an extended care facility. On August 13, 1975, she returned to Blodgett because she was suffering from pneumonia and other complications. On August 20, 1975, Dr. Grin ordered private duty nurses for Tanis. She was moved back to Kent Community on September 8, 1975, without any private duty nurses. On December 22, 1975, she again returned to Blodgett because a bulge had developed in the place where the bone had been removed during her earlier surgery. A shunt was put in to control any possible obstructions in the circulation of spinal fluid. On December 30, 1975, Tanis was transferred back to Kent Community where she has been since that time. She still requires the use of a nasal-gastric tube, a tracheotomy tube and a catheter.

At trial, Dr. Grin testified as follows:

"Basically private-duty nurses in my opinion, and this is solely my opinion, are really there for sort of comfort activities of the patient. Frequently the pa-

tients who have them are socially prominent people who want private-duty nurses.

"I frankly believe that medically in terms of delivering care that can't be delivered by hospital nurses, that they're less capable than a floor nurse.

"Hospitals have a variety of levels of care starting at the ICU and coronary care unit on down to some hospitals that have what's called an ambulatory care unit, a unit in which there's minimal nursing.

"In my opinion, if a patient needs private-duty nursing, then they need to be in the intensive care unit, where the nurses there are trained, continue to be trained, deal day in and day out with critically ill patients, as opposed to private-duty nurses who many times are people who have been out of floor nursing for several months or years, who really aren't involved with critical patient care on a day in and day out basis."

Dr. Martinus, who was the doctor in charge of Tanis at Kent Community, explained why he thought private duty nurses were not reasonably necessary. He testified that:

"Well, sir, we have—I personally, not only does the hsopital, but I personally care for other patients who are in a similar condition as Miss Green, and we care for these patients with ou[r] staff and provide them all the care that is reasonably necessary. And personally I feel that we do that very well.

"We specialize in that; that's something that we feel we know how to do well. And patients come from other hospitals for us to give that kind of care."

\* \* \*

"Well, from my observation of this patient that there is no need for a nurse to be in attendance at 24 hours of the day. Nothing changes that much that requires that constant supervision. Periodic checkups that all patients that have a similar condition to hers would be adequate to check all the different systems that are present, and all the different tubes that are functioning,

and the feedings would be given at regular intervals
and so forth."

* * *

"As a physician I never hired them, and physicians
don't hire private-duty nurses. Families, I understand,
do. And so I did not hire them. So I do not write an
order that they should be discharged. I think they are
aware of my feelings however, that we could care for
the patient without doubt, we could care, we're doing it
all the time with others. We have as many as 20 out of
40 on one wing, will be tube feeders. So there's no
problem."

Plaintiff countered this testimony by introducing
testimony, over objection, from three nurses who
testified that, in their opinion based on their expe-
riences and observations, private duty nurses were
reasonably necessary. Each of these witnesses had
cared for the patient and observed her condition.
Defendant made a motion for a directed verdict
which was denied by the trial court.

While I agree with the majority that the trial
court did not abuse its discretion in admitting
these nurses' testimony into evidence, I conclude
that this testimony was not sufficient in the face of
the physicians' testimony to the contrary to raise a
jury question as to whether these services were
reasonably necessary. Accordingly, the trial court
should have granted defendant's motion for a di-
rected verdict. Dr. Grin was the patient's own
doctor. There was no assertion that he was biased
or unconcerned. Dr. Martinus was in charge of
Tanis's care at Kent Community. These doctors
were not employed or chosen by the insurance
company. There is no question as to their ability
or competence. Considering these facts, the testi-
mony given by the nurses was not sufficient to
raise a jury question as to whether these services
were reasonably necessary in the face of contrary

testimony by qualified, unbiased physicians. I reach this conclusion for three reasons.

First, the decision as to whether to prescribe private duty nurses is not normally entrusted to nurses. By statutory definition, the practice of nursing does not include acts of medical diagnosis or the prescribing of a medical remedy, treatment or medication. MCL 338.1152(b); MSA 14.694(2)(b). Therefore, the fact that these witnesses are nurses does not necessarily indicate that they are competent to give expert testimony on this issue. Furthermore, plaintiff has not shown that any of these nurses had any experience in deciding, in similar cases, whether a given level of care was sufficient or whether private duty nurses should be provided.

The second reason I conclude that this testimony should come from physicians is that it is the physician who is responsible for making this decision. The practice of medicine "means to diagnose, treat, prevent, cure * * * a human disease * * * by attendance or advice", MCL 338.1802(g); MSA 14.542(2)(g). Physicians are trained and experienced in making these decisions. Their job and responsibilities require that they be aware of the various care facilities and possibilities that are available. They are trained to assess the needs of the patient and the capacity of various facilities to meet these needs. They should be familiar with the options or combinations of them which could be provided to the patient. After evaluating all these options in this case, the physician determined that the care given at the extended care facility was sufficient and that private duty nurses were not reasonably necessary at this time.

Also, it is the physician who bears the burden of responsibility for his decision on these questions of treatment. It is the physician, if he fails to satisfy

the appropriate standard of due care, who will be liable for his malpractice. Providing that the nurses do not fail to meet their standard of care in treating the patient, they are not responsible for the physician's error in deciding whether to prescribe private duty nurses, see, *Butler v Cadwell Memorial Hospital,* 90 Idaho 434; 412 P2d 593 (1966). Since it is the physicians who shoulder this responsibility, they should be the ones who testify as to the necessity of a medical treatment.

In this case, there is no evidence that the treatments and procedures prescribed by the physicians were inadequate or different from the ordinary methods and standards of practice observed by physicians. The evidence introduced in this case indicated that Tanis received very good care. She was originally cared for at an acute care facility where surgery was performed. After surgery, Tanis was transferred to an extended care facility. When complications developed, she was moved back to the acute care facility. These transfers demonstrate that the doctor would order additional care for her when the situation warranted it. The doctor even ordered private duty nurses for Tanis when she had pneumonia at Blodgett.

Except for their differences in opinion as to the current necessity of private duty nurses, all the parties appear to agree that Dr. Grin is an excellent doctor. He has undertaken many complicated medical procedures in an effort to save Tanis's life. He has had her transferred to an acute care facility when he concluded that it was necessary. The doctor concluded that the care provided at Kent Community was adequate to meet the patient's needs at this time. Kent Community is one of the few extended care facilities in this state and it was undisputed that it was one of the best

facilities in the state for providing extended care. Tanis was placed in a single room. The room is the closest room to one of the nursing stations on the floor.

Finally, while I certainly understand and sympathize with the position of the plaintiff, mother of this unfortunate accident victim, I think the better result in these cases is to require the expert testimony of a physician on these complex issues concerning the necessity of medical treatment. Plaintiff is seeking to have the insurer pay for these services pursuant to a no-fault automobile insurance policy. One of the goals of the new accident victim reparation system is to provide a prompt, less expensive method of reparation, see, *Shavers v Attorney General,* 402 Mich 554, 579; 267 NW2d 72 (1978). One of the methods for achieving this goal was to eliminate the necessity of going through a trial in almost every case to resolve who was at fault and the extent of damages.

Requiring physicians to give expert medical testimony on the complex issues of the necessity of one form of treatment as compared with others can further the goal of avoiding litigation in many cases. If the physician's expert opinion is competent to establish what is reasonably necessary in complex settings, this may effectively resolve many of these issues. Unless possibly the physician is biased, incompetent, or unless there is a conflict among the physicians, the insured and insurer might no longer consume precious amounts of time and energy disputing these issues. Rather, they would follow the physician's advice and begin whatever treatments were reasonably necessary to care for the injured person.

The rule may not only help assure prompt resolution of these issues and the starting of treatment, but it might also provide a greater amount

of certainty and predictability in this area. Such a rule might permit insurers to more accurately calculate the extent of the risk they are undertaking. Also, the implementation of this rule does not necessarily mean that less coverage will be provided for the injured insured. Although this appears to be the immediate result in this case, the result would change if Tanis's condition changed so that, in the opinion of her physician, she either needed to be transferred to an acute care facility or needed private duty nurses. Dr. Grin had ordered these procedures before when they were needed and presumably he would do so in the future. Also, in other cases, this rule could benefit the injured insured. There are cases in which the physician would say that a treatment is reasonably necessary even though the insurer would dispute that conclusion with other opinion evidence. However, it must be recognized that this rule will not resolve all possible disputes. In these complex cases, there are many instances in which the physicians might disagree on whether a treatment was reasonably necessary. In such cases, no one physician's opinion would be controlling. If no compromise or concensus was reached, the case would go to the jury on the basis of the physicians' expert testimony. The no-fault act itself appears to contemplate that the opinions of physicians should be sought out and received in court by providing for discovery of these opinions, see, MCL 500.3151; MSA 24.13151. Although the statute does not expressly require a physician to give expert testimony on these issues, compare Del Code, Tit 21, § 2118(a)(2)a3, I conclude that the more just result would be to read such a requirement into the statute and insurance policy in the absence of any indication that another standard was intended to be applied.